## Barker et al. v. Lannert et al.

August 19, 1949.

Samuel Steinfeld, Byron, Sandidge & Holbrook, Gavin H. Cochran, Thomas S. Dawson, Samuel R. Wells and Peter, Heyburn & Marshall for appellants.

R. Davis McAfee for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

This appeal is from a judgment of the Jefferson Circuit Court granting a writ of prohibition against appellants Hon. Horace Barker and Hon. Franklin Fitch, Judge and Judge pro tem respectively of the Jefferson County Court. The writ restrains and prohibits appellants or either of them from proceeding to hear or determine a condemnation suit instituted under KRS 278.-502 and 416.230 to 416.310, inclusive, now pending in their court, and in which action appellant Texas Gas Transmission Corporation is the plaintiff and appellees John F. Lannert and Lelia Lannert are the defendants. The chancellor granted the writ upon the theory that the county court has no jurisdiction over the condemnation suit because KRS 416.230 to 416.310, all of which comprise an act of the General Assembly of 1948, are in contravention of sections 13 and 242 of the Constitution of Kentucky. Whilst other questions were raised and issues thereon drawn by the pleadings, they were not reached in the proceedings below, and the only questions presented for our review are in respect to the constitutionality of the act in question.

The 1948 act provides that a gas pipe line company may condemn land through which to lay its transmission lines by filing in the office of the county court clerk in

which all or the greater portion of the land is situate, a verified petition, (1) alleging that the petitioner is entitled under the provisions of KRS 278.502 to condemn the land, (2) describing the land sought to be condemned, and (3) applying to the county court to appoint commissioners to award the amount of compensation the owner thereof should be entitled to receive therefor. Thereupon, the county court shall appoint as commissioners three impartial property owning housekeepers of the county who shall be sworn to faithfully and impartially discharge their duties. The commissioners then shall view the land and award to the owner the value of its use and occupation and compensation for any incidental damages resulting to adjacent lands of the owner, considering the purpose for which the land is to be taken, but deducting from the incidental damages any value of the advantages and benefits that will accrue to the adjacent lands from the construction and prudent operation of the pipe line proposed to be constructed. They shall return a written report to the office of the county clerk of their action and findings. Then, but not until then, upon request of the petitioner, the clerk of the court shall issue process against the owner of the land to show cause why the petitioner does not have the right to condemn. The summons shall contain a statement of the amount of the award. The owner may file a pleading in response to the summons which shall be confined solely to the question of the right of the petitioner to condemn, but such limitation in respect to the response shall be without prejudice to the owner's right to appeal from the amount of compensation awarded. The act then prescribes the procedure in the event the owner does not respond to the petition, but with which procedure we are not concerned because such a response was filed by appellees. In case the owner files a pleading putting in issue the right of the petitioner to condemn the land, the evidence on said issue shall be heard by the court without the intervention of a jury. If the court determines the petitioner has such right, he shall enter judgment to that effect and authorize the condemnor to take possession of the land upon the payment of all costs and the payment to the owner or to the clerk of the court, if the owner refuses to accept, the amount of the compensation awarded by the commissioners. If the court de-

termines the petitioner does not have such right, it shall enter judgment dismissing the petition and directing the petitioner to pay the costs. Either party, by executing a bond as required in other cases, may appeal to the circuit court from the amount of the award or from the judgment upon any additional ground which was contained in the exceptions filed in the county court. Appeals from the final judgment of the circuit court may be taken to the Court of Appeals as in other cases. Upon final determination of appeal the circuit court shall enter such orders as may be proper for the conveyance of the title to the land to the extent condemned. Subsection 5 of KRS 416.280 provides: "If the owner, on his appeal from a judgment authorizing the condemnor to take possession of the property condemned, fails to increase the amount of compensation awarded to him, he shall pay all costs of the appeal. * * *"

Previous to the effective date of the act in question, gas pipe line companies acquired their necessary right-of-ways under the provisions of KRS 416.010 to 416.080, inclusive. These sections of the statutes still are in effect, the new act merely providing an alternate method of procedure. Under the old act, after the commissioners have been appointed and have filed their report, either party is permitted to file exceptions, and, in the event that exceptions are filed, a jury shall be impaneled to hear evidence and fix the value of the land and the amount of the incidental damages, if any, to adjacent lands of the owner. Either party then is permitted to appeal to the circuit court where the case shall be tried de novo before another jury. The only substantial change in the method of procedure effected by the new act is that the preliminary assessment (that made in the county court) is allowed to be fixed previous to the issuance of a summons and without permitting the property owner or the condemnor to introduce evidence as to the value of the land to be condemned and the incidental damages to adjacent property by reason of the taking or application of it to the purpose for which it is being condemned. It is the contention of appellee, and was so determined by the court, that permitting the condemnor to enter into the possession of the landowner's property upon payment of the compensation thus fixed is

in violation of sections 13 and 242 of the Constitution which read:

"13. Double jeopardy; property not to be taken for public use without compensation. No person shall for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being *previously* made to him." (Our emphasis.)

"242. Just compensation to be made in condemning private property; right of appeal; jury trial. Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make *just* compensation for property taken, injured or destroyed by them; *which* compensation shall be *paid before* such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual made by Commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law." (Our emphasis.)

The basis of this contention is that compensation fixed by the designated tribunal (Commissioners) does not amount to *just* compensation as used in the sections of the Constitution above quoted. It is the contention of appellants that it was the intention of the framers of the Constitution, in order that work beneficial to the public might be carried on expeditiously, that the preliminary assessment in the county court should be the measure of just compensation until disturbed by the final assessment to be fixed on appeal by a jury, according to the course of the common law. In support of this contention appellant argues that it was the pronounced intention of the framers of the Constitution in convention assembled to provide a method whereby improvements for the benefit of the public might be carried on unhampered but at the same time to require the condemnor of land to pay, as just compensation, the amount fixed by the tribunal in the county court before entering

on the land condemned. Prior to the hearing of oral arguments in this court, counsel for all parties briefed the question from many aspects, but agreed at the hearing that the question of the constitutionality of the act would be resolved upon the determination of two questions, which are: (1) Does the method prescribed by the new act afford the commissioners an opportunity to determine, without regard to errors in judgment, the true value of the property and the injurious effect on property adjacent thereto? and (2) Does subsection 5 of KRS 416.280 place an unconstitutional requirement on the property owner in the event he elects to appeal from the preliminary assessment and, if so, is this part of the act severable, or is it so essential to the remainder of the act as to render the entire act invalid?

As a preliminary observation we call attention to the fact that neither section 13 nor section 242 of the Constitution grants any power to the legislature; on the contrary, each prescribes certain limitations on the inherent power of the legislature to exercise and delegate the right of eminent domain. Lewis on Eminent Domain (3rd edition), 21, section 10.

In the absence of constitutional restrictions, the legislature would have unlimited power in respect to the question, even to the taking, if it should so decree, of property without any compensation as was the practice in England previous to the year 1534. 41 Harvard Law Review, page 21. Since our Constitution is not a grant of power but a limitation upon the power of the legislature, and for other reasons it is unnecessary for us to state, the rule has been established that all doubt in respect to the constitutionality of legislative enactments shall be resolved in favor of constitutionality. Federal Chemical Co. v. Paddock, 264 Ky. 338, 94 S. W. 2d 645. Another preliminary observation should be made, namely: No one acquires a vested right in a mode of procedure. So long as the essential elements of protection are preserved, the legislature, as often as it sees fit, may establish various and different modes of procedure. A. Backus, Jr. and Sons, v. 4th St. Union Depot Co., 169 U. S. 557, 18 S. Ct. 445, 42 L. Ed. 853.

In construing the application of the due-process clause of the U. S. Constitution, Amend. 14, to legislative

enactments providing for the condemnation of land, the Supreme Court has said:

"But it has long been settled that due-process does not require the condemnation of land to be in advance of its occupation by the condemning authority, provided only that the owner have opportunity, in the course of the condemnation proceedings, to be heard and to offer evidence as to the value of the land taken. (Citations.) Its value may be fixed by viewers without a hearing, after entry upon the land, if their award is subject to a review in which a trial upon evidence may be had." Bailey v. Anderson, 326 U. S. 203, 66 S. Ct. 66, 67, 90 L. Ed. 3, 5.

We realize that the question raised in the case above quoted is not precisely the same as that presented for our determination. We cite it merely to demonstrate that the procedure in question, if permissible under sections 13 and 242 of our Constitution, is not so revolutionary or unprecedented as to give us pause in declaring to that effect.

Section 13 of the Constitution was contained in the first three Constitutions, whereas section 242 first appeared in the present Constitution adopted by the convention in 1890. The chairman of the committee recommending the adoption of section 242 as a part of the present Constitution, made the following remarks in support of the recommendation:

"There remains something to be said about the latter part of the section: 'The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against such corporation or individual made by commissioners or otherwise.'

"It is a well known fact, where there were condemnations under charters granted to corporations in this state, it has been attempted to deprive individuals of the right of appeal from a preliminary assessment, and it is proper that the Constitution should require that, where there is a mere preliminary assessment *where the property holder could not be heard,* it should be beyond the power of the General Assembly to ever deprive him of an appeal. We provide also that upon an appeal from such preliminary assessment, the amount of damages

shall in all cases be determined by a jury, according to the common law.'' (Our emphasis.) Constitutional Debates, Vol. 4, page 4725.

Later he said: ''It was attempted in the outset to make the Convention believe that, under this section, when a public work was about to be constructed, it could be tied up. It is perfectly clear that there is nothing in this section which authorizes such a construction.'' Constitutional Debates, Vol. 4, page 4749.

It was in reliance on this construction of section 242 that it was adopted as a part of the Constitution. It then behooves us to analyze this construction to see if it does not answer our question. Section 13 provides that just compensation should be made before the taking or application of the property to the use for which it is being condemned. This section does not prescribe any mode to be followed in arriving at the value of ''just compensation.'' Section 242 does prescribe a mode in general terms, that is, that the preliminary assessment, if it is to be construed to be just compensation, may be made by commissioners or otherwise: that is to say, it may be made by any tribunal which the legislature sees fit to designate. But the right of appeal from such preliminary assessment is preserved, but only on such appeals *must* the amount of damages be determined by a jury. It is obvious that in the words of the chairman of the committee, the public work about to be constructed would be ''tied up,'' if entry upon the land were delayed until after the final assessment of damages by the jury on appeal; but he observed, and the convention apparently agreed, that nothing contained in the section authorized one to conclude that the progress of work could be delayed. It is obvious that the just compensation referred to in both sections 13 and 242 of the Constitution, since it must be paid in advance of occupation, was not intended to be the compensation finally, if ever, fixed by a jury on appeal. The only other construction to be given to the act is that the just compensation referred to in those sections is the compensation required to be fixed before the entry of the judgment in the county court allowing the condemnor to take possession of the property. The legislature has provided that the commissioners, before making the preliminary assessment, shall acquaint themselves with the use to be made of the

property, obviously for the purpose of determining incidental injury to adjacent property, and view the property in person before making the preliminary assessment. It is true that at the time this may be done, the landowner has not been made a party to the procedure and the viewers of the property have not had an opportunity to avail themselves of all the evidence in respect to values of which the case is susceptible; but the condemnor is denied the privilege of presenting evidence to the same extent as the landowner and it is presumed that the commissioners, who have been required to take oath of office, will perform their duties in accordance with law. It seems to us that this procedure is fair to both parties, so far as it goes; and, being fair to both parties, the award made thereunder constitutes just compensation until, if ever, disturbed by a judgment pronounced on the unanimous verdict of a jury in the trial of the case on appeal. The preliminary assessment may be greater or less than the final assessment, but it may be the same. In either event, there is nothing in the procedure adopted by the legislature which, on its face, would lead one to believe that the preliminary assessment would be an unjust one. It is true that the condemnor has an opportunity to know who the commissioners are prior to the time this information is available to the landowner. And if such information is used to his advantage in fraud of the landowner's rights, the court will set aside the award made under such circumstances. But we will not presume that officers of the court, as the commissioners appointed under the act in question are, will be any more susceptible to bribery or coercion than any other officer acting in his official capacity. We are of the opinion that the act in question does not contravene the provisions of either sections 13 or 242 of the Constitution.

The appeal in actions commenced under the act in question is a part of the procedure adopted by the legislature in compliance with a mandatory provision of section 242, supra, which the condemnor must follow, or to which it must submit in order to acquire the property necessary to its use. If the landowner were required to pay the court costs of any part of the procedure prescribed, the amount of compensation awarded him for his land necessarily would be reduced by the amount

chargeable to him in the taxation of costs. To this extent, he would be denied his constitutional guarantee of just compensation under sections 13 and 242. For this, reason we are of the opinion that KRS 416.280(5) is invalid, insofar as it applies to the property owner, and since the only security the appeal bond affords the condemnor is the payment of the costs of the appeal, the landowner may prosecute the appeal without executing; bond. But that section is severable from the rest of the act, and the provision of section 242 of the Constitution, preserving the right of the landowner to appeal, is self-operating; consequently, the invalidity of the subsection does not affect the constitutionality of the act as a whole.

The judgment is reversed for proceedings not inconsistent with this opinion.